United States District Court
District of Massachusetts

```
_____
                            )
Dhananjay Patel, Safdar Hussain, )
Vatsal Chokshi, Dhaval Patel and )
Niral Patel, and all others      )
similarly situated,              )
                            )        Civil Action No.
         Plaintiffs,        )        17-11414-NMG
                            )
    v.                      )
                            )
7-Eleven, Inc., Mary Cadigan and )
Andrew Brothers,            )
                            )
         Defendants.        )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a putative class action brought by Dhananjay Patel,
Safdar Hussain, Vatsal Chokshi, Dhaval Patel and Niral Patel
(collectively "plaintiffs") on behalf of individuals who have
acquired franchises from 7-Eleven, Inc. ("7-Eleven") in the
Commonwealth of Massachusetts.  Plaintiffs allege that 7-Eleven
and two 7-Eleven market managers, Mary Cadigan and Andrew
Brothers (collectively "the individual defendants"), 1)
misclassified its franchisee convenience store workers in
Massachusetts as independent contractors instead of employees in
violation of the Massachusetts Independent Contractor Law,
M.G.L. c. 149 § 148B, 2) violated the Massachusetts Wage Act,

-1-

M.G.L. c. 149 § 148 and 3) violated the Massachusetts Minimum
Wage Law, M.G.L. c. 151 §§ 1, 7.[1]

Pending before the Court are plaintiffs' motion to remand,
7-Eleven's motion to dismiss, the individual defendants' motion
to dismiss and plaintiffs' emergency motion to enjoin defendant
from obtaining releases from putative class members.

## I.   Background

The named plaintiffs are residents of Massachusetts who
acquired 7-Eleven franchises and work as store managers and
convenience store clerks in Massachusetts.  They also bring
claims on behalf of all other individuals who have acquired 7-
Eleven franchises and performed services as store managers and
convenience store clerks in Massachusetts.

7-Eleven is a Texas corporation with its principal place of
business in Texas.  The company is a convenience store chain
that utilizes a franchise model.  Plaintiffs allege that 7-
Eleven dictates how franchisees do their jobs, including
requirements with respect to uniforms, specific training and
monitoring the workplace remotely through the use of in-store
cameras.  7-Eleven also determines store hours, controls the

---

[1] Ms. Cadigan is mistakenly referred to as "Mary Carrigan" in the
complaint's caption and "Marry Carrigan" in the body of the
complaint.

payroll system and requires that franchisees make daily monetary deposits into an account that it controls.

According to plaintiffs, they perform services exclusively for 7-Eleven, are misclassified as independent contractors instead of employees and therefore have been deprived of benefits to which employees are entitled under Massachusetts law, including a minimum wage and protection from improper wage deductions.  Plaintiffs allege that Mary Cadigan and Andrew Brothers, two 7-Eleven market managers who reside in Massachusetts, "exercised extensive control over the plaintiffs' work."

Plaintiffs filed their statutory claims with the Office of the Attorney General and received a right to sue letter, as required by M.G.L. c. 149 § 50.  Thereafter they filed this action in Massachusetts Superior Court for Middlesex County and Defendants promptly removed the case to this Court.

On June 15, 2018, 7-Eleven distributed 2019 franchise renewal contracts to all Massachusetts franchisees, including franchisees who do not have agreements expiring in 2019.  On page 208 of that 641-page document, the contract contains a "Release of claims and termination" section that requires renewing franchisees to release their claims in this case.  On June 29, 2018, plaintiffs filed an emergency motion seeking to enjoin 7-Eleven from soliciting those releases.

## II.  **Motion to remand**

Plaintiffs assert that removal was improper because the individual defendants defeat diversity jurisdiction and the "local controversy" exception to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(4), applies such that no federal question jurisdiction exists.  Defendants respond that the individual plaintiffs are "nothing more than middle managers" who were fraudulently joined to destroy diversity jurisdiction and that the conduct of the individual defendants is too insignificant to evoke CAFA's local controversy exception.

Any case removed from state court shall be remanded if at "any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C.  § 1447(c). The removal statute is to be strictly construed and defendants have the burden of demonstrating the existence of federal jurisdiction. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

### A.  **Diversity Jurisdiction**

United States district courts possess jurisdiction over all civil actions between "citizens of different States" where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Unless expressly prohibited by federal statute, defendants may remove

-4-

> any civil action brought in a State court of which the
> district courts of the United States have original
> jurisdiction,

28 U.S.C. § 1441(a), so long as no properly joined defendant "is

a citizen of the State in which such action is brought." 28

U.S.C. § 1441(b)(2).

Under the doctrine of fraudulent joinder, a plaintiff is

precluded from destroying diversity by joining a makeweight,

non-diverse defendant. See Universal Truck & Equip. Co. v.

Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014).  A

party has been fraudulently joined if there is

> no reasonable possibility that the state's highest court
> would find the complaint states a cause of action upon
> which relief may be granted against the non-diverse
> defendant.

Id.

The complaint is evaluated "on the basis of the allegations

in the complaint at the time of removal." Moniz v. Bayer A.G.,

447 F. Supp. 2d 31, 36 (D. Mass. 2006) (citing Pullman Co. v.

Jenkins, 305 U.S. 534, 537 (1939)).

Plaintiffs' complaint contains insufficient factual

allegations against defendants Cadigan and Brothers to state a

claim for relief.  The complaint states that "7-Eleven imposes a

litany of rules" and that "7-Eleven controls the entire payroll

system at the stores."  Plaintiffs allege that they have been

injured "[b]ecause of their misclassification by 7-Eleven as

independent contractors." The entirety of the allegations against the individual defendants, on the other hand, are as follows:

> Defendant Marry Carrigan (sic) is a resident Scituate, Massachusetts, where she has worked as a market manager for 7-Eleven. She has exercised extensive control over the plaintiffs' work.

> Defendant Andrew Brothers is a resident of Plainville, Massachusetts, where he has worked as a market manager for 7-Eleven. He has exercised extensive control over the plaintiffs' work.

The individual defendants are not mentioned elsewhere in the complaint. When stating their causes of action, plaintiffs state that "Defendant has misclassified" its workers (Count I), "Defendant has violated the Massachusetts Wage Act" (Count II) and "Defendant has violated the Massachusetts Minimum Wage Law" (Count III). They request that this Court enter relief against 7-Eleven but make no such request against Brothers or Cadigan.

Only officers or agents "having the management of the corporation" may be held individually liable under the Massachusetts Independent Contractor Law or Wage Act. Segal v. Genitrix, LLC, 478 Mass. 551, 559 (2017). The Massachusetts Supreme Judicial Court has recently clarified that individuals are liable only if they have accepted responsibilities over a corporation "similar to those performed by a corporate president or treasurer." Id. That Cardigan and Brothers were market

managers and exercised extensive control is not enough to state a claim upon which relief can be granted under those statutes.

Plaintiffs declare that this Court cannot hold that there is "no possibility" of establishing a cause of action because the ultimate determination of liability "depends upon contested facts."  The proper inquiry, however, is whether there is a "reasonable probability" the Massachusetts Supreme Judicial Court ("SJC) would find that the complaint states a cause of action upon which relief against the individual defendants can be granted. See Universal Truck, 765 F.3d at 108.  The SJC replaced the "no set of facts" standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957) with the "plausibility" standard of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), for determining whether a complaint is sufficiently pled. Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008).  Under the Twombley standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 636.  Plaintiffs' threadbare assertions against Cadigan and Brothers fall short. See Edwards v. Commonwealth, 477 Mass. 254, 265 (2017) (remarking that the "inquiring court need not give weight to bare conclusions, unembellished by pertinent facts") (citation omitted).

The complaint alleges only that the individual defendants "exercised extensive control over the plaintiffs' work."  That

allegation is insufficient to state a claim under any statute and does not satisfy the pleading requirements of Massachusetts Courts.  Because there is no "reasonable probability" that the SJC would find that plaintiffs' barebones complaint states a cause of action against the individual defendants, this Court finds that they were fraudulently joined.  Diversity jurisdiction exists and plaintiff's motion to remand will be denied.

### B.   Federal Question Jurisdiction

Because the Court has found that it possesses jurisdiction under the diversity statute, 28 U.S.C. § 1332(a)(1), it declines to address defendant's argument that the Court has federal question jurisdiction under the  "local controversy" exception to the CAFA.

### III. Motion to dismiss by 7-Eleven

7-Eleven contends that Count III of plaintiffs' complaint alleging violation of the Massachusetts Minimum Wage Law, M.G.L. c. 151 §§ 1, 7, should be dismissed because it does not allege sufficient factual matter.

Defendant submits that the complaint does not adequately allege that any plaintiff ever received less than the minimum wage.  The Court disagrees.  Plaintiffs provide a multitude of allegations that plausibly support their contention that they are employees, not independent contractors.  The complaint

alleges that franchisees generally work more than 50 hours per week while receiving take-home pay of less than the minimum wage.  Plaintiff Safdar Hussain describes a specific week in which that occurred.

The complaint further alleges that 7-Eleven deducts certain fees and payments from plaintiffs' wages.  Accordingly, the plaintiffs maintain, the combination of long hours and unjustified deductions from pay results in a wage below that allowed by Massachusetts law.  These allegations are not so "threadbare or speculative that they fail to cross the line between the conclusory and the factual" and they suffice to state a plausible claim upon which relief can be based. Pruell v. Caritas Christi, 678 F.3d 10, 13 (1st Cir. 2012) (quoting Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir.2011)) (internal quotation mark omitted).

The motion to dismiss of defendant 7-Eleven will be denied.

**IV.  Motion to dismiss by Mary Cadigan and Andrew Brothers**

Defendants Cadigan and Brothers assert that the complaint fails to state a claim upon which relief can be granted and that they cannot be held individually liable under the relevant statutes as a matter of law.

As outlined above, the complaint alleges no facts about the individual defendants besides their title of market manager and that they "exercised extensive control over the plaintiffs'

work." To survive a motion to dismiss under Rule 12(b)(6) a complaint must plead facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Germanowski</u> v. <u>Harris</u>, 854 F.3d 68, 71 (1st Cir. 2017) (quoting <u>Iqbal</u>, 556 U.S. at 678). Plaintiffs fail to clear this hurdle as to the individual defendants. The motion to dismiss of Andrew Brothers and Mary Cadigan will be allowed.

At oral argument the Court asked plaintiffs what facts they would allege, if permitted to amend their complaint, sufficient to state a claim for individual liability against Brothers or Cadigan. Counsel conceded that she would not be able to allege such facts without discovery. Accordingly, the Court finds that it would be futile for plaintiffs to amend their complaint with respect to the individual defendants and will dismiss those defendants with prejudice. <u>See</u> <u>In re Curran</u>, 855 F.3d 19, 28-29 (1st Cir. 2017); Fed. R. Civ. P. 15(a)(2).

## V.   <u>Emergency motion to enjoin defendant from obtaining releases from putative class members</u>

Plaintiffs contend that the subject releases are void under Massachusetts law and that defendant is attempting to interfere with the administration of this putative class action in violation of Fed. R. Civ. P. 23. Defendant responds that general releases are commonplace in franchise agreement renewals

and that its communications with class members have been in compliance with state law.

Franchise agreements that 7-Eleven enters into with its franchisees are for a limited term.  Those agreements state that, if a franchisee seeks to renew the franchise, she must operate the store in compliance with 7-Eleven's standards, remain current on financial obligations to 7-Eleven and execute a general release.  Plaintiff Patel, for instance, entered into a franchise agreement that included a "Renewal of Franchise" provision providing that

> On the Expiration Date of this Agreement, you may, at your option, renew your rights  . . . [if] [y]ou sign and deliver to us our then-current form of Store Franchise Agreement . . . and a mutual termination of this Agreement and general release of claims.

On June 15, 2018, 7-Eleven distributed 2019 franchise renewal contracts to all Massachusetts franchisees, including franchisees who do not have agreements expiring in 2019.  On page 208 ("Exhibit H") of that 641-page document, the contract contains a "Release of claims and termination" section that includes, in part:

> If you are in Massachusetts, you agree that the release contained in Paragraph 2 includes, without limitation, all claims under the Massachusetts Wage Act, G.L. c. 149 § 148, Massachusetts Independent Contract Statute, G.L. c. 149 § 148B, the Massachusetts Minimum Wage Act, G.L. c. 151, § 1, the Massachusetts Overtime Statute, G.L. c. 151, § 1A, Massachusetts Tips Law, G.L. c. 149 § 152A, and any other claim that can be brought pursuant to G.L. c. 149, § 150, c. 151 § 1B, or G.L. c. 151 § 20, or any similar statute.

> You further represent that (a) you are aware of the
> putative class action captioned <u>Patel et al.</u> v. <u>7-Eleven,</u>
> <u>Inc., et al.</u>, Case No. 1:17-cv-11414-NMG (the "Patel
> Lawsuit") pending in the federal District Court for the
> District of Massachusetts; (b) you are aware that this
> release will release claims that could be brought in the
> Patel Lawsuit; (c) you are aware that plaintiffs in the
> Patel Lawsuit are represented by Shannon Liss-Riordan, Esq.
> of Lichten & Liss Riordan, P.C., 729 Boylston Street, Suite
> 2000, Boston, MA 02116[.]

Beginning in 2019, 7-Eleven will provide franchisees a new form of franchise agreement in which most franchisees will pay a higher percentage of the store's gross profit to 7-Eleven than the franchisee is currently paying ("the 7-Eleven Charge").  In June, 2018, 7-Eleven informed franchises that it would offer existing franchisees, as an alternative to the normal renewal process, the option to maintain their current 7-Eleven charge for an additional term.  Plaintiffs submit that this proposal is intended to coerce class members into waiving their rights under the Massachusetts Wage Act in exchange for the promise that 7-Eleven will not penalize them in the future.

> A district court presiding over a purported class action
>
> may issue orders that . . . impose conditions on the
> representative parties . . . [or] deal with similar
> procedural matters."

Fed. R. Civ. P. 23(d)(1)(C), (E).

Because class actions pose a potential for abuse, the Supreme Court has emphasized that district courts have both the "duty and the broad authority to exercise control over a class

action and to enter appropriate orders governing the conduct" of
parties and of counsel. Gulf Oil Co. v. Bernard, 452 U.S. 89,
100 (1981).  An order that limits communication between parties
and potential class members should be based on a clear record
and "specific findings that reflect a weighing of the need for a
limitation with the rights of the parties." Id. at 101.  When an
"ongoing business relationship, such as employer-employee
exists," courts review communications for coercion with
heightened scrutiny. See Davine v. Golub Corp., No. CIV.A. 14-
30136-MGM, 2014 WL 5427006, at *3 (D. Mass. Oct. 24, 2014).
Courts decline to enjoin defendants "[a]bsent some showing of
past abuse, or of an intention of future abuse." McLaughlin v.
Liberty Mut. Ins. Co., 224 F.R.D. 295, 299 (D. Mass. 2004).

After a careful comparison of the potential abuse by 7-
Eleven with the rights of both parties, the Court concludes that
plaintiff's emergency request for injunctive relief is premature
and unwarranted under the Federal Rules of Civil Procedure. See
Gulf Oil Co., 452 U.S. at 101-102.

Any attempt to circumvent the Massachusetts Wage Act
constitutes a serious potential abuse.  That statute provides
that "[n]o person shall by a special contract with an employee
or by any other means exempt himself" from the duty to pay
employees a lawful wage. M.G.L. c. 149 § 148; Depianti v. Jan-
Pro Franchising Int'l, Inc., 465 Mass. 607, 622, 990 N.E.2d

1054, 1067 (2013) ("[T]he Legislature was cognizant, in general,
of the risk that employers or other persons may seek to find
ways, through special contracts or other means, to attempt to
avoid compliance . . . and intended to thwart such schemes.")
(quoting DiFiore v. Am. Airlines, Inc., 454 Mass. 486, 497
(2009).   The Massachusetts Supreme Judicial Court ("the SJC")
has

> consistently held that the legislative purpose behind the
> Wage Act (and especially the "special contract" language)
> is to provide strong statutory protection for employees and
> their right to wages.

Crocker v. Townsend Oil Co., 464 Mass. 1, 13 (2012) (collecting
cases).

For that reason, the SJC subjects contracts that release or
waive wage claims to heightened scrutiny. See Depianti, 465
Mass. at 622 (2013) (applying the Wage Act, M.G.L. c. 149
§ 148); DiFiore, 454 Mass. at 497 (2009) (applying the Tip
Statute, M.G.L. c. 149 § 152A).   If plaintiffs ultimately prove
that 1) they are employees who were paid less than the required
wage and 2) 7-Eleven's contractual arrangement with class
members provides a means for it to escape its duty to pay lawful
wages, the purported release would be void under Massachusetts
law. See Depianti, 465 Mass. at 623-24.

7-Eleven contends, however, that a franchisor may require a
release of claims as a condition of renewing a franchise

agreement.  Wage claims, it maintains, "are no less releasable than other claims."

It is true that a general release bars claims that are not within the contemplation of the parties at the time the release was executed.  <u>See</u>, <u>e.g.</u>, <u>Hyde</u> v. <u>Baldwin</u>, 34 Mass. 303, 307 (1835).  But Massachusetts courts do not treat wage claims as equivalent to other claims in a general release.   Claims arising under the Wage Act "may be released retrospectively as part of a settlement agreement," <u>Crocker</u>, 464 Mass. at 3, but a general release is ineffective to waive an employee's Wage Act claims unless it is voluntary, knowing, and supported by consideration. <u>Id.</u>

Given this framework, 7-Eleven's assertion that franchisees who assent to the release language in the renewal agreement are "simply doing what they agreed to do years ago when they signed their current contract" is incorrect.  The existing agreements state that franchisees who wish to renew must "sign and deliver . . . [a] general release of claims."  Under <u>Crocker</u>, however, that broad language is insufficient because

> absent express language that Wage Act claims are being released, a general release is ineffective to waive them.

<u>Id.</u>  For that reason franchisees did not release their Wage Act claims in this case when they signed their original franchise agreements.

In contrast to the existing franchise agreements, the "Release of claims and termination" provision of the franchise renewal contracts ("Exhibit H") includes express language about the Wage Act and this case.  Plaintiffs aver, however, that the release still does not operate as a settlement of wage claims because there is no consideration for the release.

A general release that operates as a settlement "must be supported by consideration." Sloan v. Burrows, 357 Mass. 412, 415 (1970).  Plaintiffs contend that 7-Eleven's offer to renew the franchise agreement is merely a concession to class members to "keep their jobs", but 7-Eleven responds (and the Court agrees) that when a promisee does something which it was privileged not to do, that action constitutes consideration. Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth., 357 Mass. 40, 42 (1970) (citing Williston, Contracts (3d ed.) § 102A).

Here, 7-Eleven is not obligated to renew franchise agreements with any franchisee and is not threatening to terminate existing agreements.  Renewal of such an agreement constitutes consideration.  Although plaintiffs posit that consideration for release of a Wage Act claim must be more substantial than consideration for other kinds of releases, they cite no case law for that proposition and the Court is aware of none.

Notwithstanding the Court's conclusion, the release contained in Exhibit H raises serious concerns.  The exhibit provides that all Massachusetts franchisees release

> without limitation, all claims under the Massachusetts Wage Act . . . or any similar statute.

The Court construes the extremely broad language of the contract as applying to future wage claims, not just past claims.  In permitting the retrospective release of Wage Act claims as part of a settlement agreement, the Crocker court observed that it did not consider

> releases or waivers of prospective Wage Act claims, a matter far more problematic under the special contracts provisions of the Wage Act.

Crocker, 464 Mass. at 3 n.3; see also Depianti, 465 Mass. at 624 ("To allow such an end run around M.G.L. c. 149, § 148, would contravene the express purpose of the statute and would nullify the provision therein that specifically forbids this type of arrangement by a special contract with an employee or by any other means.") (quoting M.G.L. c. 149, § 148) (internal quotation marks omitted).

Finally, the Court finds Haitayan v. 7-Eleven, Inc., Case No. 18-5465 DSF (ASx) (C.D. Cal. July 2, 2018), upon which defendant heavily relies, distinguishable.  First, Haitayan involved federal and California law, not Massachusetts law. Second, the wage claims had been dismissed in a separate case

prior to the motion at issue in that decision.  The Haitayan
opinion addresses whether

> it is unconscionable and impermissibly coercive for a
> franchisor to require a release of claims as a condition of
> renewing [a franchise agreement].

Id. at Slip op. 5.  It does not address the Crocker standard for
release of Wage Act claims nor whether 7-Eleven has offered
franchisees consideration for a legitimate settlement of
negotiable employment issues.  As such, the Haitayan decision
proffers little guidance for the determination of the issues
before this Court.

In any event, neither the enforceability of the releases in
the existing franchise agreements nor of the franchise renewal
agreements is before the Court at this time.  Those questions
will ripen only if and when it is determined that: 1) these
plaintiffs are employees, 2) a class of which they are members
is certified and 3) 7-Eleven violated the Wage Act to the
plaintiffs' detriment.

Plaintiffs seek a narrow injunction that would 1) exclude
from the proffered release in the franchise renewal agreement
claims raised in this case and 2) vacate any releases already
obtained.  Plaintiffs have not, however, demonstrated a
necessity for such injunctive relief.  Should the Court conclude
at the end of these proceedings that class members are entitled
to damages and that 7-Eleven unlawfully attempted to disrupt

this class action, damages can be awarded.  The Court may also
invalidate wrongfully obtained releases at any stage in the
litigation. See generally
Camp v. Alexander, 300 F.R.D. 617, 625 (N.D. Cal. 2014).
Because monetary damages and post-trial injunctive relief can
make plaintiffs whole, a preliminary injunction is unnecessary.
Cf. Oxford Immunotec Ltd. v. Qiagen, Inc., 271 F. Supp. 3d 358,
368 (D. Mass. 2017) (holding that preliminary injunction movant
failed to demonstrate irreparable harm because it did not
demonstrate that money damages would be insufficient).

Plaintiffs' emergency motion will be denied.

### ORDER

For the foregoing reasons, plaintiffs' motion for remand
(Docket No. 18) is **DENIED**, defendant 7-Eleven's motion to
dismiss (Docket No. 19) is **DENIED**, defendants Mary Cadigan's and
Andrew Brothers' motion to dismiss (Docket No. 20) is **ALLOWED**,
and plaintiffs' emergency motion to enjoin defendant from
obtaining releases from putative class members by plaintiff
(Docket No. 33) is **DENIED WITHOUT PREJUDICE**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated July 20, 2018

-19-