United States District Court
District of Massachusetts

| | |
|---|---|
| DHANANJAY PATEL, SAFDAR HUSSAIN, VATSAL CHOKSHI, DHAVAL PATEL AND NIRAL PATEL, AND ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>V.<br><br>7-ELEVEN, INC.,<br><br>DEFENDANT AND THIRD-PARTY PLAINTIFF.<br><br>V.<br><br>DPNEWTO1, DP TREMONT STREET INC., DP MILK STREET INC., DP JERSEY INC.,<br><br>THIRD-PARTY DEFENDANTS. | Civil Action No. 17-11414-NMG |

MEMORANDUM & ORDER

GORTON, J.

   This is a putative class action brought by Dhananjay Patel, Safdar Hussain, Vatsal Chokshi, Dhaval Patel and Niral Patel (collectively "named plaintiffs" or "franchisees") on behalf of individuals who have acquired franchises from 7-Eleven, Inc. ("7-Eleven" or "defendant") in the Commonwealth of Massachusetts.

Plaintiffs initially alleged that 7-Eleven and two 7-Eleven market managers, Mary Cadigan and Andrew Brothers (collectively "the individual defendants"), 1) misclassified its franchisee convenience store workers in Massachusetts as independent contractors instead of employees in violation of the Massachusetts Independent Contractor Law, M.G.L. c. 149, § 148B, 2) violated the Massachusetts Wage Act ("the Wage Act"), M.G.L. c. 149, § 148 and 3) violated the Massachusetts Minimum Wage Law, M.G.L. c. 151, §§ 1, 7.

This Court dismissed the claims against the individual defendants but allowed plaintiffs' claims against 7-Eleven to proceed (Docket No. 49). Subsequently, 7-Eleven filed counterclaims against the named plaintiffs (Docket No. 52) and a third-party complaint against DPNEWTO1, DP Tremont Street Inc., DP Milk Street Inc. and DP Jersey Inc. (collectively "the third-party defendant corporations") (Docket No. 53). The third-party defendant corporations are limited liability companies through which three named plaintiffs (Vatsal Choksi, Dhaval Patel and Niral Patel) contracted to perform work for 7-Eleven.

The third-party defendant corporations are subject to franchise agreements with 7-Eleven. Those franchise agreements contain, in relevant part, identical language with respect to independent contractor status and indemnification. With respect

to independent contractor status, the franchise agreements provide that

> You and we agree that this Agreement creates an arm's-length business relationship and does not create any fiduciary, special or other similar relationship. You agree: (a) to hold yourself out to the public as an independent contractor; (b) to control the matter and means of the operation of the Store; and (c) to exercise complete control over and responsibility for all labor relations and the conduct of your agents and employees, including the day-to-day operations of the Store and all Store employees. You and your agents and employees may not: (i) be considered or held out to be our agents or employees or (ii) negotiate or enter any agreement or incur any liability in our name, or our behalf, or purporting to bind us or any of our or your successors-in-interest. Without in any way limiting the preceding statements, we do not exercise any discretion or control over your employment policies or employment decisions. All employees of the Store are solely your employees and you will control the manner and means of the operation of the Store. No actions you, your agents or employees take will be attributable to us or be considered to be actions obligating us.

With respect to indemnification, the franchise agreements provide that

> You agree to be responsible for and indemnify us, our Affiliates, and our and their respective officers, directors, agents, representatives, employees, successors and assigns (collectively, the "7-Eleven Indemnified Parties") from all losses arising out of or relating to your Store and its operation, except those specifically the responsibility of or indemnified by us. This indemnification will survive the expiration, termination, or transfer of this Agreement or any interest in this Agreement. You may obtain insurance to cover your indemnification obligation. Your total indemnification obligation to us will not exceed $500,000.

In their counterclaims and third-party complaint, 7-Eleven moves for declaratory relief to void the franchise agreements and makes claims for breach of contract and indemnification. Pending before this Court are plaintiffs/third-party defendants' motion to dismiss and motion for leave to file an answer.

I. **Legal Analysis**

   A. **Plaintiffs' Motion to Dismiss Defendant's Counterclaims and Third-Party Complaint**
      **1. Standard of Review**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint (or a counterclaim) must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the complaint (or counterclaim) as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts

in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208. Although a court must accept as true all the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id. Accordingly, a complaint (or counterclaim) does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

### 2. Breach of Contract

Plaintiffs argue that they cannot be in breach of the franchise agreements because 7-Eleven's contract terms with respect to employment status are unenforceable as a matter of law. Defendant responds that plaintiffs waived their right to challenge the applicability or legality of the franchise agreements because they failed to file an answer to the counterclaim. Moreover, defendant argues, in the alternative, that because plaintiffs held themselves out as employees, when they are presumed to be independent contractors under the franchise agreements, defendants have adequately alleged a breach of contract claim.

The parties further dispute whether employment status, for the purpose of evaluating the motion to dismiss, is premised upon a legal conclusion or a factual dispute.

Although plaintiffs' failure to file a timely answer to the counterclaim requires this Court to presume that any allegation is admitted, pursuant to Fed. R. Civ. P. 8(b)(6), this Court will allow plaintiffs to file a late answer, as explained below. Accordingly, this Court's analysis of plaintiffs' motion to dismiss will be limited to the merits and will not address the procedural claim that plaintiffs waived their defenses.

Neither the Court nor 7-Eleven disputes the assertion that, if a factfinder concludes that plaintiffs are employees, defendants' breach of contract counterclaim/third-party complaint fails as a matter of law. Notwithstanding that caveat, defendant has alleged that plaintiffs signed franchise agreements in which they agreed to hold themselves out as independent contractors and stipulated in those agreements that the third-party plaintiffs control the manner and means of the franchised stores' operation. Thus, at this stage of the proceeding, the Court finds it is premature to dismiss defendant's breach of contract counterclaim when defendants have alleged sufficient facts to state a claim and the underlying dispute (whether plaintiffs are independent contractors or employees) requires some factual inquiry into the subject

employment relationships. See, e.g., Schwann v. FedEx Ground Package Sys., Inc., No. CV 11-11094, 2017 WL 4169425, at *6 (D. Mass. Sept. 20, 2017); Craig v. Sterling Lion, LLC, 43 N.E.3d 726 (Mass. App. Ct. 2016) (allowing question of employment status to go to the jury); see also Hose v. Henry Indus., Inc., No. 4:15-CV-01913-JAR, 2017 WL 386545, at *4-5 (E.D. Mo. Jan. 27, 2017) (denying plaintiff's motion to dismiss defendant's indemnification counterclaim on preemption grounds); Astorga v. Castlewood Consulting, LLC, No. GJH-14-4006, 2015 WL 2345519, at *3 (D. Md. May 14, 2015) (accepting defendant's assertion as true and denying plaintiff's motion to dismiss defendants' counterclaim).

### 3. Indemnification Provision

Next, plaintiffs submit that their indemnification obligations are not at issue because their claims relate to how 7-Eleven pays them and do not arise from the operation of the stores. They aver that 7-Eleven's interpretation of the indemnification clause leads to an absurd result whereby 7-Eleven would be indemnified for its own breach of duty. Moreover, they claim that allowing 7-Eleven's counterclaim to proceed would discourage the enforcement of the Wage Act and constitutes an unlawful retaliatory act.

In response, 7-Eleven submits that Massachusetts courts construe "arising out of" broadly and that plaintiffs' claims

arise from or relate to the operation of the third-party defendants' stores. It further avers that the counterclaims do not survive only if plaintiffs ultimately prevail on the fact-issue of whether they are in fact employees, not independent contractors.

The Court finds that the plain meaning of the franchise agreements does not support plaintiffs' assertion because Massachusetts courts construe "arising out of" broadly and defendants have plausibly claimed that the wages at issue are based on the difference between each store's total assets and liabilities. See Huffington v. T.C. Grp., LLC, 637 F.3d 18, 22 (1st Cir. 2011) (finding that the term "arising out of" is broader than the concept of a causal connection and means "connected by reason of an established or discoverable relation"). Moreover, if the plaintiffs are found to be employees, defendant's indemnification counterclaim fails as a matter of law. Thus, the "absurd result" that plaintiffs apprehend will not come to fruition and defendant has adequately pled that its alleged losses from this suit arise out of or relate to the operation of the 7-Eleven stores.

To the extent that the Fernandez decision has any bearing here, the Court concludes that it is distinguishable because 1) unlike New York law, Massachusetts law does not construe indemnification clauses narrowly (Caldwell Tanks, Inc. v. Haley

& Ward, Inc., 471 F.3d 210, 217 (1st Cir. 2006)) and 2) the indemnification clause at issue is broader than that of the Fernandez indemnification provision. Fernandez v. Kinray, Inc., No. 13CV4938ARRSMG, 2014 WL 12778829, at *4 (E.D.N.Y. Feb. 5, 2014).

### 4. Retaliation and Leave to Amend

Plaintiffs argue that the counterclaims and third-party complaint are retaliatory because 7-Eleven now seeks to terminate the franchise agreements on the basis of claims alleged in plaintiffs' Wage Act claim. Because 7-Eleven allegedly retaliated after the complaint was filed, plaintiffs claim that justice requires leave to file an amendment. 7-Eleven responds that the amendment is futile because plaintiffs have not suffered an adverse employment consequence.

Although another session of this Court held that constructive discharge is a necessary element for a retaliation claim under the Wage Act, the text of the Wage Act itself is broader than constructive discharge in that it provides that

> [a]ny employer who discharges <u>or in any other manner discriminates against any employee</u> because such employee . . . has instituted, or caused to be instituted any proceeding under or related to this chapter . . . shall have violated this section. . . .

M.G.L. c. 149, § 148A (emphasis added). Thus, this Court is not persuaded that plaintiffs must demonstrate constructive

discharge to make out a claim of retaliation under the Wage Act. Defendant has, however, asserted persuasively that

> conduct occurring within the scope of litigation does not provide grounds for retaliation . . . [b]ecause filing a counterclaim is different from initiating a lawsuit . . . unlike initiating litigation against an employee, filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because . . . plaintiffs have already made their charges and initiated a lawsuit.

Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827, 833-34 (N.D. Ill. 2006).

Accordingly, for the same reasons that this Court allowed defendant's counterclaims to proceed, those counterclaims do not lack "reasonable basis in law or fact." See Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008) (finding an employer's counterclaim of fraud was made with a "retaliatory motive and without a reasonable basis in fact or law") (emphasis added). Thus, defendant's counterclaims do not constitute an adverse action (whether discharge or discrimination) for purposes of a retaliation claim and plaintiffs' motion for leave to amend will be denied.

### 5. Count I of Defendant's Counterclaim

Plaintiffs dispute defendant's contention that they have failed to address 7-Eleven's relief of declaratory judgment with respect to the franchise agreements. Regardless of whether plaintiffs addressed the relief in their pleadings, the Court agrees with defendant that the declaratory judgment they seek

with respect to the franchise agreements is contingent on the factual issue of whether the named plaintiffs are employees or independent contractors. Thus, because the underlying factual predicate of employment status is in dispute, plaintiffs' alleged failure to address the asserted relief in the counterclaim is immaterial.

### B. Plaintiffs' Motion for Leave to File a Late Answer to Defendant's Counterclaims

Plaintiffs move for leave to file a late answer under Fed. R. Civ. P. 6(b)(1)(B) for excusable neglect based on a death in lead counsel's family and associate turnover within the law firm while lead counsel was out of the office. They further claim that defendants will not be prejudiced because discovery has not yet begun and that their assent to 7-Eleven's prior request for an extension of time represents plaintiffs' good faith. Finally, plaintiffs submit that allowing a late-filed answer will allow this Court to review the merits of the case which is favored over procedural default claims. Defendant responds that personal and professional upheaval does not provide a sufficient reason for delay, particularly given that plaintiffs filed their motion to dismiss defendant's counterclaims before seeking leave to file an answer.

With respect to excusable neglect, the Court must consider the following factors: 1) the danger of prejudice, 2) the length

of the delay and its potential impact on judicial proceedings, 3) the reason for the delay, including whether it was within the reasonable control of the movant and 4) whether the movant acted in good faith. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). In evaluating the Pioneer factors, the First Circuit Court of Appeals ("the First Circuit") has made clear that the excuse given carries the greatest import. Hosp. del Maestro v. N.L.R.B., 263 F.3d 173, 175 (1st Cir. 2001).

7-Eleven's attempts to analogize this case to that of Skrabec v. Town of N. Attleboro, 321 F.R.D. 46, 47 (D. Mass. 2017) (refusing to find excusable neglect where there was a death) and Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 64 (1st Cir. 2001) (refusing to find excusable neglect where there was turnover in the law firm) is misplaced. District courts have wide discretion in considering late-filed claims and must make such a determination based on the "totality of the relevant circumstances." In re Sheedy, 875 F.3d 740, 743-44 (1st Cir. 2017). Here, the Court finds that taken together, the personal tragedy of a death in counsel's family and the turnover in associates at counsel's law firm amount to a sufficient reason for excusing the delay.

Moreover, to the extent 7-Eleven argues that the two proffered excuses are independently insufficient, the Court

finds that both Skrabec and Davial-Alvarez are distinguishable from the facts at bar. In Skrabec, this Court allowed defendants' motion for summary judgment before plaintiffs moved to alter judgment under Fed. R. Civ. P. 60(b)(1). Skrabec, 321 F.R.D. at 48. It then denied plaintiffs' motion to alter judgment because 1) plaintiffs' reliance on settlement negotiations was inexcusable, 2) the motion for summary judgment was unopposed for more than three weeks after the deadline for a response and 3) defendants would suffer unfair prejudice if a motion to alter judgment was entered. Id. Here, there is no similar concern of reliance on settlement negotiations (because plaintiffs have vigorously prosecuted the case) or concern of unfair prejudice. In fact, in light of this Court's decision to allow 7-Eleven's counterclaims to proceed and the fact that discovery has not yet commenced, the Court is hard pressed to see how 7-Eleven have been prejudiced at all.

Furthermore, with respect to the Davial-Alvarez decision, the Court there took into consideration the fact that the deceased attorney failed to communicate with the Court or with opposing counsel and thus failed to indicate any active prosecution of the case. Davila-Alvarez, 257 F.3d at 65. Conversely, here, plaintiffs' counsel have communicated with the Court and opposing counsel and have made clear their active prosecution of this case.

Finally, the Court rejects defendant's argument that plaintiffs' counsel acted in bad faith. The Court will not assume that, because plaintiffs filed a motion to dismiss defendant's counterclaims under Fed. R. Civ. P. 12(b)(6), as opposed to Fed. R. Civ. P. 12(c), plaintiffs knew they had failed to file an answer. Consistent with established Supreme Court principle,

> [t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Foman v. Davis, 371 U.S. 178, 181-82 (1962).

Accordingly, because defendant faces minimal prejudice, plaintiffs have proffered a sufficient excuse and defendant has not demonstrated that plaintiffs acted in bad faith, plaintiffs' motion for leave to file a late answer will be allowed.

### ORDER

For the foregoing reasons, plaintiffs' motion to dismiss defendant's counterclaims and third-party complaint (Docket No. 62) is **DENIED** and plaintiffs' motion for leave to file a late answer (Docket No. 68) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 6, 2019