United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| Dhananjay Patel, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 17-11414-NMG |
| 7-Eleven, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a putative class action brought by five 7-Eleven, Inc. ("7-Eleven" or "defendant") franchise store owners and operators, Dhananjay Patel, Safdar Hussain, Vatsal Chokshi, Dhaval Patel and Niral Patel (collectively "plaintiffs"). Plaintiffs brought this putative class action on behalf of themselves and a putative class of similarly situated individuals in the Commonwealth of Massachusetts.

Plaintiffs allege that 7-Eleven (1) misclassified the franchisees as independent contractors instead of employees in violation of the Massachusetts Independent Contractor Law, Mass. Gen. L. c. 149, § 148B (Count I) and (2) has violated the Massachusetts Wage Act, Mass. Gen. L. c. 149, § 148 (Count II). Plaintiffs also initially alleged that 7-Eleven violated the

-1-

Massachusetts Minimum Wage Law, Mass. Gen. L. c. 151, §§ 1, 7 (Count III) but voluntarily withdrew that claim in July, 2020.

Pending before the Court on remand from the First Circuit Court of Appeals are the parties' cross motions for summary judgment and plaintiffs' motion for class certification. Because this dispute stretches back over five years and has been the subject of opinions of this Court, the First Circuit Court of Appeals and the Massachusetts Supreme Judicial Court, only the relevant background is included below.

## I. Background

### A. The Parties

7-Eleven is a Texas corporation with its principal place of business in Texas. It both sells convenience store franchises and operates its own corporate stores. There are approximately 160 franchisee-operated 7-Elevens in Massachusetts.

The named plaintiffs own and operate 7-Eleven franchises in the Commonwealth, where they reside. Two of the named plaintiffs, Dhananjay Patel and Sadar Hussain, entered into franchise agreements directly with 7-Eleven.

The remaining three named plaintiffs entered into franchise agreements with 7-Eleven on behalf of separate corporate entities: Niral Patel on behalf of DP Milk Street, Inc., Dhaval Patel on behalf of DP Tremont Street, Inc., and Vatsal Chokski

on behalf of both DP Jersey, Inc. and DPNEWTO1, Inc.  These plaintiffs receive their salaries from the respective corporate franchisees.

### B.   The Franchise Agreements

To establish each franchise location, the plaintiffs entered into franchise agreements ("the Franchise Agreement") with 7-Eleven.  Dhananjay Patel and Sadar Hussain signed these agreements as individuals while Niral Patel, Dhaval Patel and Vatsal Chokski executed the agreements on behalf of their respective corporations.

The Franchise Agreement, which is substantively identical in all cases, grants franchisees the license and right to operate a 7-Eleven store.  It outlines in detail the obligations and covenants that both 7-Eleven and the franchisees agree to fulfill when an individual purchases a 7-Eleven franchise store. Section 2 of the Franchise Agreement, for example, provides that the franchisee agrees "to hold [itself] out to the public as an independent contractor."

The franchisee promises to pay several fees to 7-Eleven both upon execution of the Franchise Agreement and throughout the franchisor-franchisee relationship.  In Section 3, the franchisee agrees to pay 7-Eleven a franchise fee, initial gasoline fee and down payment.  Section 10(a) outlines the "7-

Eleven Charge", a fee 7-Eleven collects in exchange for providing the 7-Eleven License.

> 7-Eleven Charge. You agree to pay us the 7-Eleven Charge for the License, the Lease and our continuing services. The 7-Eleven Charge is due and payable each Collection Period with respect to the Receipts from the Collection Period at the time the deposit of those Receipts is due. . . . You may not withhold Receipts or prevent payment of the 7-Eleven Charge to us on the grounds of the alleged non-performance or breach of any of our obligations to provide services to you or any other obligations to you under this Agreement or any related agreement.

**C.    Procedural Background**

In June, 2017, plaintiffs filed this class action in Massachusetts Superior Court for Middlesex County and in August, 2017, defendant removed the case to this Court on diversity grounds.

After this Court denied defendant's motion to dismiss, 7-Eleven counterclaimed for: (1) declaratory judgment that the plaintiffs' franchise agreements are void (Counterclaim I); (2) breach of contract (Counterclaim II); and (3) contractual indemnity (Counterclaim III).  Additionally, 7-Eleven filed third-party complaints against DPNEWTO1, Inc., DP Tremont Street, Inc., DP Milk Street, Inc. and DP Jersey, Inc., the four corporations on behalf of which a named individual plaintiff signed a Franchise Agreement with 7-Eleven.  This Court denied

-4-

plaintiffs' motion to dismiss the counterclaims and the third-party complaints in September, 2019.

In March, 2020, both parties filed cross motions for summary judgment and plaintiffs filed their motion for class certification. This Court allowed summary judgment in favor of defendant, 7-Eleven.

Plaintiffs appealed the summary judgment decision to the First Circuit Court of Appeals, which certified a question of law to the Massachusetts Supreme Judicial Court ("the SJC") in August, 2021. See Patel v. 7-Eleven, Inc., 8 F.4th 26 (1st Cir. 2021) ("[W]e consider the most prudent approach to be to give the SJC the first opportunity to weigh in on this issue."). The certified question was:

> Whether the three-prong test for independent contractor status set forth in Mass. Gen. Laws ch. 149 § 148B applies to the relationship between a franchisor and its franchisee, where the franchisor must also comply with the FTC Franchise Rule?

Id. In March, 2022, the SJC answered the certified question, explaining that the Massachusetts ICL both applies to the franchisor-franchisee relationship and does not conflict with the federal franchisor disclosure requirements in the FTC Franchise Rule. Patel v. 7-Eleven, Inc., 183 N.E.3d 398 (Mass. 2022). The First Circuit Court of Appeals then vacated the

decision of this Court and remanded the case for further proceedings.

In July, 2022, the parties submitted supplemental briefing in support of their pending cross motions for summary judgment and plaintiffs' motion for class certification. The deadline for all remaining discovery is December 30, 2022, and trial is scheduled to commence in late January, 2023.

## II. Motion for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact

in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most hospitable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law, then summary judgment is warranted. Celotex Corp., 477 U.S. at 322-23.

    **B.    The Massachusetts Independent Contractor Law ("the Massachusetts ICL")**

Massachusetts considers "an individual performing any service" for another to be an employee, unless the purported employer can rebut that presumption. Mass. Gen. L. c. 149, § 148B(a).  To do so, the employer must prove the three conjunctive elements of an independent contractor relationship:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

>   (2) the service is performed outside the usual course
>       of the business of the employer; and,
>
>   (3) the individual is customarily engaged in an
>       independently established trade, occupation,
>       profession or business of the same nature as that
>       involved in the service performed.

Id. at § 148B(a)(1)-(3) ("the ABC Test").  If an employer is unable to satisfy any prong, then the individual is classified as an employee. Sebago v. Bos. Cab Dispatch, Inc., 28 N.E.3d 1139, 1146 (Mass. 2015).

### C. Arguments of the Parties

7-Eleven argues that the Massachusetts ICL does not apply because (1) plaintiffs cannot meet the threshold inquiry that franchisees perform services for 7-Eleven because 7-Eleven in fact provides services to the franchisees in exchange for payment and (2) 7-Eleven is not the direct employer of Dhaval Patel, Niral Patel or Vatsal Chokshi because their separate corporate entities signed Franchise Agreements with 7-Eleven and thus 7-Eleven is, at a minimum, not liable for any alleged misclassification as to those plaintiffs.  Furthermore, 7-Eleven contends that plaintiffs have not incurred any Wage Act damages because the SJC deemed franchise fees legal in Patel v. 7-Eleven, Inc., 183 N.E.3d 398 (Mass. 2022).

Plaintiffs respond that (1) the Massachusetts ICL applies because plaintiffs do perform services for 7-Eleven, (2) the

-8-

existence of plaintiffs' corporations does not render the Massachusetts ICL inapplicable and (3) the SJC opinion in Patel does not invalidate plaintiffs' Wage Act claim.

### D. Application

#### 1. Resolving the Services Inquiry on Summary Judgment

As an initial matter, 7-Eleven again reiterates in its supplemental briefing that plaintiffs do not provide services to it, and thus cannot meet the threshold inquiry for the Massachusetts ICL to apply, while plaintiffs, not surprisingly, dispute that contention.

The threshold inquiry to determine if an individual is deemed an employee under the Massachusetts ICL is whether the "individual perform[s] any service" for the alleged employer. Mass. Gen. L. c. 149, § 148B(a). "Service" is construed liberally to effectuate the remedial purpose of the statute in "protect[ing] employees from being deprived of the benefits enjoyed by employees through their misclassification." Somers v. Converged Access, Inc., 911 N.E.2d 739, 749 (Mass. 2009).

This Court initially declined to enter summary judgment for defendant on this ground after considering (1) plaintiffs' argument that the services inquiry is a low threshold issue, (2) the competing allegations and various contractual obligations of both parties and (3) the language of the Franchise Agreement.

The SJC has, however, provided additional guidance on the threshold inquiry when it resolved the First Circuit's certified question in this matter. See Patel, 183 N.E.3d at 411. The SJC explained:

> This threshold is not satisfied merely because a relationship between the parties benefits their mutual economic interests. Nor is required compliance with Federal or State regulatory obligations enough, in isolation, to satisfy this threshold inquiry.

Id. (citing Jinks v. Credico (USA) LLC, 177 N.E.3d 509, 515-16 (Mass. 2021); Sebago, 28 N.E.3d at 1147-48). This additional guidance is instructive in analyzing whether plaintiffs have satisfied their burden of demonstrating that they do in fact perform services for 7-Eleven. See Patel, 183 N.E.3d at 404 ("Once the individual has shown the performance of services for the putative employer, the alleged employer may rebut the presumption by establishing [the ABC test] by a preponderance of the evidence."). With this guidance in mind, this Court will proceed to analyze the record to determine if plaintiffs can satisfy the threshold inquiry.

**2. Whether Plaintiffs Perform "Services" for 7-Eleven**

7-Eleven continues to assert that the plaintiff franchisees pay it, the franchisor, for the provision of services. It denies the suggestion that 7-Eleven pays the plaintiffs for any services.

Both parties rely upon the obligations outlined in the Franchise Agreement to bolster their services inquiry arguments. Plaintiffs contend that the covenants in the Franchise Agreement constitute services that they perform for 7-Eleven. For example, plaintiffs discuss Section 19 of the Franchise Agreement, in which they promise to work full time in the store, operate the store 24 hours a day, record inventory sales, wear approved uniforms and use the 7-Eleven payroll system. Plaintiffs also refer to certain financial obligations outlined in Section 12, such as preparing and submitting a cash report and depositing receipts, as services performed for 7-Eleven. In response, defendant stresses that these contractual obligations are not, on their own, services performed for an employer within the meaning of the Massachusetts ICL.

Rather, defendant cites Sebago for the proposition that services are obligations performed by employees in exchange for payment. In Sebago, the SJC held that the plaintiff taxi drivers did perform a service for the defendant radio associations, because the radio associations paid the taxi drivers when they redeemed their passengers' vouchers that were purchased from the radio association. 28 N.E.3d at 1149. In the case at bar, however, 7-Eleven does not pay the franchisees for the performance of any alleged obligations. In fact, the

opposite is true, because 7-Eleven actually provides the franchisees with services in exchange for franchise fees.

Defendant renders the following services: both initial and ongoing training programs, including access to the 7-Eleven Operations Manual (Section 4), the grant of a license to operate the 7-Eleven store at the specified location (Section 7), bookkeeping records and payroll software (Section 12), store audits (Section 14), maintenance of 7-Eleven equipment and performance of store repairs (Section 20) and advertising services (Section 22).  Per Section 15, 7-Eleven also

> procure[s] the initial inventory [for the franchisees,] help[s] [them] clean and stock the store [and] provide[s] other services to prepare the store to open for business.

In return for such services, plaintiffs pay 7-Eleven a franchise fee and down payment (Section 3) and pursuant to Section 10 of the Franchise Agreement, they "agree to pay [7-Eleven] the 7-Eleven Charge for the License, the Lease and [7-Eleven's] continuing services."  As this Court previously found, 7-Eleven does not pay the plaintiffs for anything.

> 7-Eleven does not pay franchisees a salary.  Instead, franchisees may withdraw weekly or monthly "draws" from the store's gross profit minus the 7-Eleven Charge and store expenses.

Patel v. 7-Eleven, Inc., 485 F. Supp. 3d 299, 303-04 (D. Mass. 2020).

The Court remains unconvinced that the plaintiffs' contractual obligations outlined in the Franchise Agreement alone are enough to constitute services under the Massachusetts ICL.  The record demonstrates that they are not paid for any services performed for 7-Eleven.  In contrast, the franchisees pay franchise fees to 7-Eleven in exchange for a variety of services to support the franchisee.

### 3. Plaintiffs' Revenue Argument

Plaintiffs suggest that because the revenue flowing to 7-Eleven is directly dependent on their stores' revenue, they provide services to 7-Eleven.  That theory was, however, rejected by the SJC twice in the past year, both in Patel and Jinks.  In Jinks,

> the plaintiffs urge[d] that an entity is an individual's employer so long as the individual is "performing any service" from which the entity derives an economic benefit [and the SJC remarked that it already] rejected such an approach in Depianti v. Jan-Pro Franchising.

177 N.E.3d at 515-16 (citing 990 N.E.2d 1054 (Mass. 2013)). Further, in Patel, the SJC reiterated that the services threshold is not met "merely because a relationship between the parties benefits their mutual economic interests." 183 N.E.3d at 411.  Plaintiffs and 7-Eleven do have mutual economic interests, as both profit from the franchise stores' revenue.  That mutual

interest is not, however, sufficient to establish that plaintiffs perform services for 7-Eleven.

The SJC insisted in Patel that

> nothing in the independent contractor statute prohibits legitimate franchise relationships among independent entities that are not created to evade employment obligations under the wage statutes.

183 N.E.3d at 411 (citing An Advisory from the Attorney General's Fair Labor Division on M.G.L. c. 149 § 148B 2008/1, https://www.mass.gov/ doc/an-advisory-from-the-attorney-generals-fair-labor-division-on-mgl-c-149-s-148b-20081/download). Here, 7-Eleven's mutual economic interests with the plaintiff franchisees in the stores' sales and revenue are inherent in legitimate franchise relationships. The Franchise Agreement sets forth a legitimate franchise relationship between 7-Eleven and the individual plaintiffs who operate their own stores. The Massachusetts ICL does not prohibit those relationships, and thus, the mere fact that the parties share economic interest does not imply that plaintiffs perform services for 7-Eleven.

The Court, thus, rejects the notion that plaintiffs perform services for 7-Eleven. The franchisees, who pay franchisor 7-Eleven for a plethora of services, are merely fulfilling their

contractual obligations. The Court will, therefore, allow summary judgment in defendant's favor on both remaining counts.

Having so concluded, plaintiffs' motions for summary judgment on 7-Eleven's liability for misclassification and class certification will be denied. 7-Eleven's counterclaims and third-party claims for (1) declaratory judgment that the various franchise agreements are void; (2) breach of contract; and (3) contractual indemnity are not the subject of any summary judgment motion and, therefore, remain pending.

### ORDER

For the foregoing reasons, defendant 7-Eleven, Inc.'s motion for summary judgment (Docket No. 112) is **ALLOWED**. Plaintiffs' motions for summary judgment and class certification (Docket Nos. 117, 118) are **DENIED**.

The parties are directed to submit a joint status report on defendant's pending counterclaims against plaintiffs and third-party defendants on or before Wednesday, October 19, 2022.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 28, 2022